IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| WILLIE C. FRAZIER, | ) | |
| --- | --- | --- |
| Petitioner, | ) | 8:18CV419 |
| v. | ) | |
| BRAD HANSEN, | ) | MEMORANDUM AND ORDER |
| Respondent. | ) | |

Willie C. Frazier (Petitioner) has filed a petition for writ of habeas corpus under the provisions of 28 U.S.C. § 2254. The Respondent has answered and filed the relevant state court records. The parties have now fully briefed the case. I deny the petition with prejudice for the reasons set forth below.

### *Claims*

Summarized and condensed, Petitioner has two claims that are potentially cognizable in this court. They are set forth below.

*Claim One*: Trial and appellate counsel were ineffective because of: (1) the failure to obtain a police report regarding the gun and because of the failure to argue at trial and on appeal that Petitioner was never in actual possession of the gun; (2) trial counsel's failure to call witnesses for Petitioner; (3) trial and appellate counsel's failure to attack "Count III," a habitual offender allegation, inasmuch as such an allegation should not have been described as a "Count."

*Claim Two*: Appointed trial counsel and appellate counsel failed to challenge the trial court's refusal to allow retained counsel to represent Petitioner.

## Background

I start with a description of this case taken from the Nebraska Court of Appeals while resolving the direct appeal.

> Christopher Perna, an officer with the Omaha Police Department, applied for a search warrant on February 10, 2011, seeking permission from the court to search premises located at a particular address in Omaha for marijuana, money, telephones, records, and weapons used to conduct an illegal narcotics operation. In support of the search warrant application, Perna stated in an affidavit that he was investigating an anonymous tip received from a person who stated that Rodney Anthony, who lives at the premises, was selling crack cocaine and marijuana from the home. Perna confirmed that Anthony had provided the same address during contacts with other police officers, that the address was on his driver's license, and that the utilities for the address were in Anthony's name. Perna also discovered that Anthony had numerous marijuana charges, was sentenced to 1 year's imprisonment in 2004 for possession with intent to distribute crack, and spent 4 years in a federal penitentiary for conspiracy to distribute a controlled substance, crack, in 2004. Anthony also had several arrests involving weapons.
>
> Perna's affidavit further stated that on February 9, 2011, he went to Anthony's address on "trash day" and located a trash bag sitting outside near the street. The trash was likely put out the night before and was seized at 5 or 6 a.m. Perna transported the bag to a secure facility and located loose, green plant material resembling stems in the bag. Perna knew from his experience that the items were a byproduct of marijuana. Perna also located an envelope with Anthony's name and address on it. Later that day, Perna received confirmation from the forensic laboratory that the materials tested positive for marijuana.
>
> Perna requested a no-knock search warrant, because the evidence being sought could easily be destroyed by flushing it down a toilet or sink. Perna also was aware of several gun charges which may pose a threat to the officers executing the search warrant. A no-knock search warrant was

obtained on February 10, 2011, and executed on February 16 by an Omaha Police Department SWAT team.

Officer Paul Milone operated the iron "ram" that knocked in the door. Officer Thad Trosper was the first member of the SWAT team inside the residence. Trosper observed an individual on the floor next to a glass table. Trosper gave a command to the individual not to move. The individual was later identified as Frazier. There was also a woman on the floor to the left of Frazier. No one else was in the home.

When Milone entered the residence, he made contact with Frazier, who was on the floor of the living room next to a coffee table. For the officers' safety, Milone said to Frazier, "Sir, you're known to carry firearms. Do you have a gun on you now?" Frazier responded, "Yes, I have one by my right hand." A handgun was found in the position that Frazier indicated, approximately 6 to 8 inches from Frazier's right hand.

Officer Scott Beran, another member of the SWAT team that executed the warrant, assisted in clearing the house and then returned to the living room where Frazier had been located. Prior to Beran's securing Frazier in handcuffs, he was able to view the gun just a few inches from Frazier's right hand. An officer arrived to take photographs of the scene without moving the firearm or Frazier. After the photographs were taken, Beran retrieved the gun, dropped the magazine from it, and cleared the round which was in the chamber. The magazine contained an additional 10 rounds. No latent fingerprints were found on the gun.

Perna took Frazier into the kitchen area of the house to interview him. Frazier told Perna that Anthony is his nephew. After reading Frazier his Miranda rights, Frazier agreed to speak with Perna. Frazier told Perna that he was living at Anthony's residence and sleeping on the couch. Perna told Frazier that officers located a handgun within Frazier's reach or close to Frazier's person, and Frazier acknowledged that it was there and that he pointed it out to the officers. Frazier stated that Anthony had been a victim of home invasion robberies recently and that Frazier had a handgun for protection.

The warrant and inventory was returned on March 1, 2011. The inventory included a gun that was found in the living room "next to Frazier" and one live round from the gun's chamber. In other areas of the house, officers also seized surveillance cameras, bullets, bills, marijuana, hydrocodone pills, crack pipes, and cash.

On March 15, 2011, the State filed an information in Douglas County District Court charging Frazier with possession of a deadly weapon by a prohibited person, a Class ID felony, and possession of a stolen firearm, a Class III felony. The State also alleged that Frazier was a habitual criminal.

Frazier filed a motion to suppress all evidence seized from the residence because the evidence was obtained in violation of his constitutional rights. Frazier alleged that the search warrant was not supported by sufficient evidence to establish probable cause and that the execution of the search warrant by force and without notice violated his Fourth Amendment rights.

The court heard testimony and received a copy of the search warrant application and search warrant into evidence. Based upon this evidence, the district court found that the search warrant was validly issued and was supported by sufficient probable cause. It further found that the service was done within the time limit specified by statute. Accordingly, the court denied the motion to suppress.

A jury trial was held on August 4 and 5, 2011. Prior to the commencement of the trial, the State dismissed the charge of possession of a stolen firearm. The parties stipulated that Frazier had a prior felony record and was thus a "prohibited person." Testimony was heard from the various police officers, crime laboratory technicians, and the chief deputy clerk of the district court as outlined above.

At the jury instruction conference, Frazier objected to the court's proposed instruction defining the element of possession. Frazier proposed a jury instruction defining "possession" as "either knowingly having the object on one's person; or knowing of the object's presence,

having the ability to control it, and the intent to do so." The court rejected this proposed instruction and overruled Frazier's objection to the court's instruction of the definition of possession.

Following deliberations, the jury found Frazier guilty of possession of a deadly weapon by a prohibited person. The district court accepted the jury's verdict, ordered an enhancement hearing on the habitual criminal allegation, and ordered a presentence investigation. On October 7, 2011, an evidentiary enhancement hearing was held to determine whether Frazier was a habitual criminal as charged in the information. The evidence indicated that Frazier was convicted of eight felonies from April 1994 to March 2004. The court found that Frazier was a habitual criminal.

A sentencing hearing was held on October 18, 2011. The court sentenced Frazier to 16 to 30 years' imprisonment, with the first 10 years of the sentence to run without good time credit. Frazier subsequently perfected his appeal to this court.

*State v. Frazier*, No. A-11-931, 2012 WL 4009722, at *1–3 (Neb. Ct. App. Sept. 11, 2012); filing no. 6-1 at CM/ECF pp. 1-3.

The lawyers who represented Petitioner at trial were from the public defender's office and one of them also represented Petitioner on direct appeal. After the adverse Court of Appeals' decision, no petition for further review to the Nebraska Supreme Court was filed. (Filing no. 6-3.) The Court of Appeals decision was issued September 11, 2012.

None of the claims presented here were presented to the Nebraska Court of Appeals on the direct appeal. On the contrary, the following claims were asserted: (1) the district court erred in denying Petitioner's motion to suppress, (2) the district court erred in its jury instruction regarding possession, (3) the evidence adduced at trial was

insufficient to find Petitioner guilty beyond a reasonable doubt, and (4) the sentence imposed was excessive.

On May 9, 2013, Petitioner filed a post-conviction action. It was later amended. Petitioner asserted nine claims, to wit: (1) ineffective assistance of appellate counsel for failing to raise on direct appeal that the trial court erred in overruling his motion to suppress statements; (2) ineffective assistance of trial and appellate counsel for failing to challenge the habitual criminal allegation and finding; (3) the trial court committed plain error when it found him to be a habitual criminal because the finding resulted in a double sentence enhancement; (4) ineffective assistance of trial counsel for failing to file a motion to suppress the evidence on grounds that the weapon was not found on his person and law enforcement did not witness him throw the weapon; (5) ineffective assistance of trial counsel for failing to file a motion to quash the Information because he did not possess the weapon; (6) ineffective assistance of trial counsel for failing to call Dana Wells as a witness at trial to "call[] into question" the location of the weapon; (7) ineffective assistance of trial counsel for failing to make a *Batson* challenge; (8) ineffective assistance of appellate counsel for failing to properly argue on direct appeal issues with regard to the search warrant and his arrest; (9) ineffective assistance of appellate counsel for failing to raise on direct appeal the *Batson* issue; (10) the trial court committed plain error when it gave Jury Instruction No. 9 and failed to give the jury his proposed instruction on "proximity"; and (11) the trial court erred when it denied his right to hire private counsel.[1]

---

[1] As previously scheduled in a pretrial conference on May 10, 2011, trial began on Wednesday, August 3, 2011. (Filing no. 6-12 at CM/ECF p. 31, p. 28.) On the preceding Friday, July 29, 2011, Jason C. Hubbard entered his appearance as private counsel and sought a continuance of trial. (*Id.* at CM/ECF pp. 22-23.) On that same day, a hearing was held where the prosecutors, the public defenders, Mr. Hubbard and Petitioner were present. The trial court questioned the Petitioner and Mr. Hubbard. The judge found that "Mr. Hubbard has no criminal defense background[.]" (*Id.* at CM/ECF p. 24.) The motion for continuance was denied and Hubbard's appearance was rejected. Petitioner proceeded to trial with the two public defenders.

(Filing No. 8, pp. 6-7.)

On August 4, 2017, the state district court entered an order on Petitioner's amended motion, denying post-conviction relief without an evidentiary hearing. (*Id.* at CM/ECF pp. 62-68.) With regard to Petitioner's ineffective assistance of counsel claims, the state district court concluded generally that the record showed no prejudice in light of the evidence adduced against him at trial and that, in the alternative, Frazier failed to allege specific allegations of prejudice for his claims. (*Id.* at CM/ECF pp. 63-64.) It nevertheless addressed a portion of Petitioner's claims in more detail, finding either that the record refuted them or that Petitioner failed to allege sufficient allegations. (*Id.* at CM/ECF pp. 64-67.) Finally, the state district court concluded that Petitioner's claims of trial court error (including the claim that Petitioner was denied the right to counsel of his choice) were procedurally barred for failure to raise them on direct appeal.[2] (*Id.* at CM/ECF p. 68.)

Petitioner appealed to the Nebraska Court of Appeals alleging three errors, to wit: (1) failing to grant relief on his "underlying" constitutional claims; (2) denying him his right to an evidentiary hearing in violation of Nebraska statutes; (3) failing to find his trial counsel was ineffective. (Filing no. 6-2 at CM/ECF p. 8; filing no. 6-7 at CM/ECF p. 9.) Summarized and condensed, the Court of Appeals found that Petitioner's claims that were discernable from his vague appellate filings were procedurally barred, or regarding allegations of trial court error that were not procedurally bared nevertheless lacked merit, and applying the *Strickland* standard,

---

[2] Despite the fact that Petitioner had the same counsel during trial and on direct appeal (public defenders), the issue of whether Petitioner was entitled to be represented by separate retained counsel could have been raised on direct appeal because appellate counsel and trial counsel (the public defenders) were unrelated to retained counsel. Raising the right-to-counsel argument on direct appeal would not have implicated the conduct of the public defenders who represented Petitioner during trial and direct appeal. And the failure to raise that issue thus results in a default.

Petitioner's arguments regarding both trial and appellate counsel lacked merit. (Filing no. 6-2.)

Petitioner sought further review from the Nebraska Supreme Court asserting seven arguments. (Filing no. 6-10; filing no. 8 at CM/ECF p. 10.) The Nebraska Supreme Court denied the petition for further review on August 13, 2018, and the mandate issued on August 27, 2018. (Filing no. 6-4.) This habeas petition was filed on September 6, 2018. (Filing no. 1.)

### *Overview of Pertinent Law*

Three strands of federal habeas law intertwine in this case. They are the law of exhaustion and procedural default, the deference that is owed to the state courts when a federal court reviews the factual or legal conclusions set forth in an opinion of a state court, and the standard for evaluating a claim of ineffective assistance of counsel.

I briefly set out those principles now, so that I may apply them later in a summary fashion as I review Petitioner's claims. I turn to that task next.

### *Exhaustion and Procedural Default*

As set forth in 28 U.S.C. § 2254:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B) (i) there is an absence of available State corrective process; or

> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A state prisoner must therefore present the substance of each federal constitutional claim to the state courts before seeking federal habeas corpus relief. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented to the trial court, then in an appeal to the Nebraska Court of Appeals, and finally in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

"In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal citation and quotation marks omitted). Although the language need not be identical, "[p]resenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement."

*Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999). In contrast, "[a] claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition." *Wemark v. Iowa*, 322 F.3d 1018, 1021 (8th Cir. 2003) (citation omitted).

Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting Gray v. Netherland, 518 U.S. 152, 162 (1996)).

To be precise, a federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### *Nebraska Law Relevant to Procedural Default*

Under Nebraska law, you don't get two bites of the post-conviction apple; that is, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003). Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002). *See also* State v. Thorpe, 858 N.W.2d 880, 887 (Neb. 2015) ("A motion for postconviction relief

cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased."); *State v. Filholm*, 848 N.W.2d 571, 576 (Neb. 2014) ("When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred.") (Italics added).

Moreover, a person seeking post-conviction relief must present his or her claim to the district court or the Nebraska appellate courts will not consider the claim on appeal. *State v. Deckard*, 722 N.W.2d 55, 63 (Neb. 2006) (denying post-conviction relief in a murder case and stating: "An appellate court will not consider as an assignment of error a question not presented to the district court for disposition through a defendant's motion for postconviction relief.")

More specifically, if a person raises an issue in an initial motion for post-conviction relief but fails to raise it in an amended motion the claim is defaulted under Nebraska law. *State v. Armendariz*, 857 N.W.2d 775, 789 (Neb. 2015) (affirming denial of post-conviction relief in a murder case and stating that "[a]n amended pleading supersedes the original pleading, whereupon the original pleading ceases to perform any office as a pleading. It is clear the district court did not err in limiting its analysis to the motion that was before it–the amended motion.").

Similarly, on appeal, the appealing party must both assign the specific error and specifically argue that error in the brief. Otherwise the claim is defaulted under Nebraska law. *State v. Henry*, 875 N.W.2d 374, 407 (Neb. 2016) (stating an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court).

### *Deference Under 28 U.S.C. § 2254(d)*

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.*

However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. Accordingly, the postconviction trial court's discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted).

The court also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497. A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.*

### *The Especially Deferential Strickland Standard*

When a petitioner asserts an ineffective assistance of counsel claim, the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984), must be applied. The standard is very hard for offenders to satisfy.

*Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687. The first prong of the *Strickland* test requires that the petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Id.* at 687-88. In conducting such a review, the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The second prong requires the petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" in a later habeas corpus action. *Id.* at 690.

Additionally, the Supreme Court has emphasized that the deference due the state courts applies with special vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 556 U.S. 111 (2009). In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and "leeway," which presents a "substantially higher threshold" for a federal habeas petitioner to overcome. As stated in *Knowles*:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Id.* at 123 (internal quotation marks and citations omitted).

*Strickland* applies equally to appellate counsel, and appellate counsel is entitled to the "benefit of the doubt." *Woods v. Etherton*, 136 S. Ct. 1149, 1153 (2016) (a "fairminded jurist" could have concluded that repetition of anonymous tip in state-court cocaine-possession trial did not establish that the uncontested facts it conveyed were submitted for their truth, in violation of the Confrontation Clause, or that petitioner was prejudiced by its admission into evidence, precluding federal habeas relief under Antiterrorism and Effective Death Penalty Act (AEDPA); Petitioner could not establish that Petitioner's appellate counsel was ineffective, as appellate counsel was entitled to the "benefit of the doubt").

## *Analysis*

**Claim One** has three parts. That is: Trial and appellate counsel were ineffective because of: (1) the failure to obtain a police report regarding the gun and because of the failure to argue at trial and on appeal that Petitioner was never in actual possession of the gun; (2) trial counsel's failure to call witnesses for Petitioner; and (3) trial and appellate counsel's failure to attack "Count III," a habitual offender allegation, inasmuch as such an allegation should not have been described as a "Count."

**Part 1 of Claim One**

As to part 1 of Claim One, the claim of ineffective assistance of direct appeal counsel is defaulted and no excuse has been shown that would allow me to overlook it. No argument was presented to the Nebraska courts in the post-conviction litigation that appellate counsel was ineffective for failing to raise the issue of the police report and for failing to argue that Petitioner was not in possession of the weapon.[3]

---

[3] *Direct appeal* counsel *did* raise and argue the possession argument. "Frazier argues that the State failed to prove that he was in possession of the gun found in the house. Frazier asserts that he was a houseguest and that his proximity to the gun was the only evidence offered by the State." *State v. Frazier*, No. A-11-931, 2012 WL

Respondent implicitly concedes that this claim as it regards *trial counsel* was exhausted and not procedurally defaulted. Respondent therefore addresses the merits of the claim of ineffective assistance of counsel regarding the failure to obtain a police report and the failure to argue that Petitioner was not in actual possession of the weapon. So shall I.

As for the police report, there is no showing whatever that the results would have been different had the police report been obtained by trial counsel.[4] Moreover, trial counsel clearly and vigorously argued that the gun was not his and he was not in possession of it. (E.g., filing no. 6-15 at CM/ECF pp. 120-123.) For example, defense counsel made a vigorous argument that Petitioner could not have possessed the gun because a crime lab technician swabbed Petitioner and the gun but found no matching DNA. (Filing no. 6-18 at CM/ECF p. 46.[5]) In short, under the *Strickland* standard, trial counsel were not ineffective, and Petitioner suffered no prejudice, regarding the issues of the police report and possession of the weapon.

**Part 2 of Claim One**

The argument about the alleged failure to call witnesses was not presented through one complete round of the Nebraska courts and is therefore procedurally defaulted. No excuse has been shown that would allow me to ignore the default.

---

4009722, at *7 (Neb. Ct. App. Sept. 11, 2012). Thus, in addition to being procedurally defaulted, this claim lacks a supporting foundation.

[4] In fact, trial counsel used the police reports or lack thereof against the prosecution. For example, counsel argued: "Why are they so certain [about Petitioner's admission when] half of them didn't even write a police report . . . But they can remember exactly the verbiage that my client used during this discussion." (Filing no. 6-15 at CM/ECF p. 123.)

[5] But, as the prosecutor noted in rebuttal, "the crime lab tech . . . dropped the buccal swab on the floor." (Filing no. 6-18 at CM/ECF p. 61.)

**Part 3 of Claim One**

This claim–that trial and appellate counsel were ineffective for failing to attack the habitual offender allegation, Count III–has been procedurally defaulted and no excuse has been shown that would permit me to excuse the default.

**Claim Two** reads like this: Appointed trial counsel and appellate counsel failed to challenge the trial court's refusal to allow retained counsel to represent Petitioner.

Phrased as an ineffective assistance of counsel claim, this matter was never subjected to one complete round of review in the state courts. Thus, this claim, as phrased, has been procedurally defaulted and no excuse has been shown.

The only time anything similar was raised was in the amended post-conviction pleadings and also in the petition for further review to the Nebraska Supreme Court as a part of the post-conviction litigation. There Petitioner essentially argued that the trial court erred by not allowing Jason Hubbard to represent him and not that his trial and appellate counsel were ineffective for failing to contest that decision. But that argument was not presented on direct appeal where, assuming trial court error, it was required to be presented. And no matter how phrased, the essence of the argument–I didn't get the lawyer of my choice–was not presented to the Nebraska Court of Appeals during the direct appeal or in the post-conviction litigation either.[6] Thus, under either phrasing, Claim Two has been procedurally defaulted and no excuse has been shown.

---

[6] The Nebraska Supreme Court rules governing petitions for further review require a party to "set forth a separate, concise statement of each *error alleged to have been made by the Court of Appeals*, all of which must be annotated to the record as required by § 2-109." Neb. Supreme Court Rule 2-102(F)(3) (emphasis added). Since the claim, no matter how phrased, was not presented to the Court of Appeals, the petition for further review could not present the issue to the Nebraska Supreme Court.

I note also that the trial judge's refusal to recognize the appearance of new counsel and the judge's refusal to grant a continuance of trial so new counsel might prepare for a trial that had been scheduled months in advance, coming only two full business days before trial was set to commence, did not violate Petitioner's Sixth Amendment rights. *See*, *e.g.*, *United States v. Jones*, 662 F.3d 1018, 1024 (8th Cir. 2011) ("'trial courts are vested with broad discretion in matters of continuances for the purpose of substituting counsel.' *Cordy*, 560 F.3d at 815 (quotation omitted). 'In exercising its discretion, the district court must carefully balance the defendant's right to be represented by the counsel of his choice against the court's interest in the orderly administration of justice.' *Id*. (quotations omitted). '*Last-minute requests to substitute counsel ... remain disfavored*,' *United States v. Rodriguez*, 612 F.3d 1049, 1054 (8th Cir. 2010), and *'a trial court's discretion is at its zenith ... when the defendant endeavors to replace counsel shortly before trial.*' *Cordy*, 560 F.3d at 817 (quotation omitted)'") (Emphasis added). So, even if I would get to the merits, Petitioner is not entitled to relief.

## *No Certificate of Appealability*

Lastly, a petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000). I have applied the appropriate standard and determined that Petitioner is not entitled to a certificate of appealability.

IT IS ORDERED that the habeas corpus petition (filing no. 1) is denied and dismissed with prejudice. No certificate of appealability has been or will be issued. Judgment will be issued by separate document.

DATED this 11th day of February, 2019.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.